### SOUTHERN TRACTION CO. v. GLENN et al. (No. 6148.)

(Court of Civil Appeals of Texas. Austin. March 16, 1920. Rehearing Denied April 28, 1920.)

1. Negligence ⬯61(1)—Proximate cause may be one of several.

Negligence, though not the sole cause of an injury, was a proximate cause, rendering the negligent party liable, if it was one of several causes and was a prominent or efficient cause.

2. Carriers ⬯276(3)—Finding that carriage beyond destination caused death held authorized.

Evidence *held* to authorize finding that negligent carriage beyond his destination, with consequent exposure, of a passenger having pneumonia was proximate cause of his death.

Error from District Court, McLennan County; Geo. N. Denton, Judge.

Action by Martha C. Glenn and another against the Southern Traction Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Sanford & Harris, of Waco, for plaintiff in error.

Weatherby & Rogers, of Waco, for defendants in error.

KEY, C. J. In this case a verdict and judgment were rendered for Mrs. Martha Glenn and Minnie Glenn, the surviving wife and minor child of J. J. Glenn, against the defendant, Southern Traction Company; and the latter has brought the case to this court by writ of error.

The plaintiffs in the court below, who are defendants in error in this court, have made the following statement in their brief of the facts which they contend were established by the testimony:

"The material facts established by the testimony in this case relied upon by defendants in error are that on the morning of January 22, 1915, the deceased, J. J. Glenn, in company with his son, C. J. Glenn, and his landlord, J. T. Rogers, went to the interurban station of the appellant for the purpose of obtaining passage for the deceased from Waco, Tex., to West, Tex., a distance of about 17 miles, over the electric interurban lines of the appellant; that at the time the said J. J. Glenn was suffering from pains in his side, which the doctor had diagnosed as pneumonia; that he had first felt these pains on the afternoon of the 20th (two days before) and, on the day before, the doctor had recommended to him that the rooming house where he was staying was no suitable place for a pneumonia patient, and that he should go to some more suitable place where he could obtain better care and attention, preferably to the hospital; that all arrangements had been made by long-distance telephone for family relatives to meet the said J. J. Glenn at West, Tex., and take proper care of him; that the sick man was assisted out of the buggy, in which he had ridden some two blocks, and into the interurban station, where J. T. Rogers purchased his ticket for him, and he and C. J. Glenn assisted the sick man onto the waiting interurban car, and that some six minutes before it left J. T. Rogers tendered the ticket to the conductor, explaining the circumstances in full to him, and requesting that the conductor see to it that the sick man be put off at the station of West; that the son of the sick man was there, and offered to accompany his father to West, but after the conductor prom-

ised to help him off at West, and since all arrangements had been 'made for relatives to meet him there, prepared to take care of him, the father and son agreed that it would not be necessary for the son to accompany him, but, instead, he could come on and bring the farm wagon which was needed at home; that in violation of his promise, and with full notice of the age and infirmities of the said J. J. Glenn, the conductor failed to assist him off the car at West, and paid no further attention to him until after the station of West had been passed, when he discovered his mistake and put the sick man off at Abbott on a cold, wet day in January, without taking any precautions of any kind for the safety or comfort of the old man; that the old man was forced to wait in the lumber yard office, the only place maintained by plaintiff in error as a station, in a barny old building, partly exposed to the weather, until the south-bound interurban car came along, when he was assisted back on the car by the kindness of a fellow passenger; that he was again put off the car at West, without any care or attention, after his relative had left the station; that he staggered around in the mud for awhile until a kind passenger went and got a buggy and helped him to find his relative's home, where he went in and was put to bed; that he died the next day as a result of his undue exposure to the weather and his excited condition and nervous strain caused by the negligent conduct of the appellant."

While the brief of the traction company contains numerous assignments of error, some of which complain of the action of the trial court in giving and refusing instructions, and in rulings made concerning the admissibility of certain testimony, to our minds the only serious question in the case is involved in the contention that the proof fails to show that the death of J. J. Glenn was caused by the negligence of the traction company in carrying him beyond West, putting him off at Abbott, and carrying him back to West, and the failure to properly provide for his comfort during that time. In other words, the contention is that the proof fails to show that J. J. Glenn would not have died if the traction company had complied with its promise, and put him off when the car first reached West; and therefore, fails to show that his death was caused by what occurred after he was carried beyond the West station.

The testimony shows that J. J. Glenn was taken sick in the city of Waco; that he lived some distance from there in the country, and had come to Waco in a wagon; that he consulted Dr. Smith, a physician, who diagnosed his case as pneumonia, and advised him to go to a hospital, but instead of doing so he went to a rooming house, and occupied a room that was not suitable for one in his condition; that on the next day his son, who was with him, made arrangements for him to go on appellant's interurban railroad to the town of West, where he would be received and cared for by relatives and friends. He was carried to the station in a buggy, which was closed on the north side to protect him from the wind, and with the assistance of his son got on the car; and his son decided not to go with him after the conductor, who was told that he was a sick man, had promised to assist him in getting off at West. It was shown that in getting on the train he walked by himself in the aisle between the seats, but, notwithstanding that fact, he was very sick with pneumonia, and was in a critical condition.

Upon the hypothetical case, which plaintiffs' testimony tended to establish, Dr. Smith testified as follows:

"Assuming that instead of being put off at West he had been carried on to the town of Abbott, up in Hill county some six miles beyond, the weather was cold, the wind was from the north, the ground was wet, and there he was put off and walked by himself to the station, some 25 or 30 feet from the car, into a room where the front part was used as a station, the building being used as a lumber building, the back part of the place opened out to the lumber shed, the door leading out to the lumber yard was open, the lumber shed back was closed, the door leading out from the building of the room where he was into the lumber shed was open, and it was reasonably warm, close around the stove, and uncomfortably cold away from the stove; he stays there some 25 or 30 minutes, and then goes back, and while there he was standing up; he staggers and falls; he is caught and put in a chair, and then is carried out; he walks out where the cars stop, and stands there until the car was in position, and then he gets on the car; he steps on the car, and is carried back to West; there he is put off, and he walks out into the street; a stranger sees him, and he goes to him, takes him on across and carries him into a hallway or steps to the fire station, and he puts him in there and sits him down and goes off to get a horse and buggy to take him where his people live; finally he comes back with a horse and buggy; he had gotten up, and wandered up and down the street; the man goes down and gets him and puts him in the buggy, there it is muddy, and drives him around looking for the place; finally, he drove up to a house, goes in, and asks the people where Mr. Glenn's relatives live; they tell him; he goes back, and gets in the buggy, and then drives on to where the place is; there he gets out and goes into the house—assuming those are the facts, as to what would be the effect or tendency of that exertion after he passed West and changes in the car and coming back and getting off the car at West, and standing around and staggering around outside, as to accelerating and greatly increasing his disease, it is bound to have lessened his power of endurance.

"With reference to whether it is a fact that that was enough, leaving the old fellow up there, putting him off there in the mud and having him stand around there, and walking in the mud, walking around there, as to whether that was not enough to kill any ordinary pneumonia patient, I would say it would help very materially.

"After going out there and staying out there in this hallway, and then getting up again and going out into the street, and then the man comes with a horse and buggy and picks him up, that is enough to kill any ordinary man that has a case of pneumonia. It would materially help it. I would not say directly that it would. It would materially help to produce the fatal end."

Dr. J. H. Thomas, who treated Mr. Glenn after he reached West, and diagnosed the disease as pneumonia, expressing his opinion upon the hypothetical case submitted by the plaintiffs' counsel as to what would be the result of carrying the patient beyond the station of West, said:

"I don't know. I will say that any amount of exposure or exercise in the case of pneumonia will have a deleterious effect. The more exposure, the more bad effect necessarily. Whether a small amount would be sufficient to kill a man or a bigger amount, I don't know. If a small amount of exposure don't kill, a large amount might. You could keep on until you kill him; he chokes up and dies."

Dr. G. B. Foscue, when asked his opinion upon the plaintiffs' hypothetical case, said:

"Assuming those statements as facts as to what in my opinion the effect of his being carried by West to Abbott and brought back from Abbott to West in his condition as described when he left Waco, as to whether that was the cause of his death on the morning of the 23d, I would say, as stated before, any physical exertion would be detrimental to the man wherever he was. It would be worse if he was out in the cold and out in the rain. The fact of his being even the sixty minutes or one hour would be detrimental to him; any exertion or exercise would be detrimental to him in that condition."

Dr. Carl Lovelace, testifying as an expert, gave his opinion as to the result of carrying the deceased beyond West and bringing him back to that station, as follows:

"I should say that it would unduly minimize whatever chances he had to recover on account of the great amount of exercise. Pneumonia is a disease, the treatment of which the patient should be at rest; rest is the prime essential. The more exposure and the more exercise he took, the worse it was for him; that unduly militates greatly against the man's recovery. Rest is the prime treatment more than anything else."

[1, 2] No other doctors testified in the case. If the negligence of the traction company in the particulars referred to was the sole cause of the death of J. J. Glenn, or if it was one of two or more causes, and it was a prominent or efficient cause, then it was a proximate cause of his death, and the traction company was liable to the plaintiffs for such pecuniary injury as resulted to them by reason of his death. Railway v. Green, 141 S. W. 341; Railway v. Groner, 43 Tex. Civ. App. 264, 95 S. W. 1118; Louthian v. Ft. Worth & D. C. R. Co., 50 Tex. Civ. App. 613, 111 S. W. 665; Ellyson v. Railway, 33 Tex. Civ. App. 1, 75 S. W. 868; Id., 43 Tex. Civ. App. 45, 94 S. W. 910.

In the Green Case just cited this court said:

"To constitute a negligent act the proximate cause of the injury, it need not be the sole cause, but it is sufficient if it is the concurring cause from which such a result might reasonably have been contemplated, as involving the result under the attending circumstances."

The Supreme Court refused to grant a writ of error in that case, and accepting the doctrine there announced as the correct rule of law, we think the verdict of the jury, which in effect finds that the negligence of the traction company was a proximate cause of the death of Mr. Glenn, is supported by the testimony of the physicians who testified, and especially by the evidence given by Dr. Smith.

All the other questions presented by the plaintiffs in error have received due consideration, and are decided against it and in favor of the defendants in error.

No reversible error has been shown, and the judgment is affirmed.

Affirmed.